Case 1:21-cv-04548-JGK   Document 19   Filed 11/12/21   Page 1 of 3



# BINNALL
## LAW GROUP

P: 703-888-1943 • F: 703-888-1930
717 King Street, Suite 200 • Alexandria, VA 22314

**Jesse R. Binnall**
PARTNER

D: 571-467-6566
E: jesse@binnall.com

November 12, 2021

**VIA ECF**
The Honorable John G. Koeltl
United States District Court
500 Pearl Street
New York, New York 10007

*[handwritten: THE COURT WILL DISCUSS THE ISSUES IN THIS CORRESPONDENCE, PLUS ALL OTHER OUTSTANDING MATTERS, AT THE CONFERENCE SCHEDULED FOR DECEMBER 13, 2021, AT 4:30PM. THE CLERK SHALL CLOSE DOCUMENT 19.]*

**RE:** *Chinese Americans Civil Rights Coalition, Inc. v. Trump*, 21 Civ. 4548 (JGK)

*[handwritten: SO ORDERED. /s/ John G. Koeltl USDJ 11/12/21]*

Dear Judge Koeltl:

This office represents President Donald J. Trump, in his individual capacity, ("President Trump") in this action brought by the Chinese Americans Civil Rights Coalition, Inc. ("Plaintiff"). Plaintiff asserts claims for defamation and intentional and negligent infliction of emotional distress against President Trump, in both his official and individual capacities. Addressed here, however, are only issues concerning the claims against President Trump in his *individual* capacity.

Plaintiff's claims against President Trump in his individual capacity should be dismissed for (1) failure to state a claim, (2) disregard of the First Amendment and anti-SLAPP laws, and (3) lack of standing and subject matter jurisdiction. Accordingly, President Trump writes to respectfully request a pre-motion conference pursuant to the Court's Individual Rule II.B concerning his anticipated Motion to Dismiss the Complaint.

## I. Background

On May 20, 2021, Plaintiff filed its Complaint against President Trump "in his former official capacity as President…for his defamatory slanders and libel since the outbreak of the COVID-19 pandemic, and as a private citizen for continuously making defamatory statements…." But Plaintiff admits that President Trump stated the need to "protect our Asian American community" and the virus is "NOT' their fault." Compl. ¶ 31. Specifically, as to President Trump, in his personal capacity, Plaintiff seeks damages and equitable relief solely due to a March 16, 2021, interview on Fox News where President Trump described the COVID-19 virus as the "China Virus." Compl. ¶¶ 2, 37.

## II. Discussion

### a. Plaintiff has Failed to State a Claim

Plaintiff failed to state a claim for defamation *per se*. "The elements [of defamation] are [1] a false statement, [2] published without privilege or authorization to a third party, [3] constituting fault as judged by, at a minimum, a negligence standard, and [4] it must either cause special harm or constitute defamation per se." *Ogbon v. Beneficial Credit Servs.*, 2011 U.S. Dist. LEXIS 11615, *14 (2011) (internal citations omitted).

Plaintiff claims the speech is defamatory, thus false; yet, in the same Complaint admits that "the first outbreak of the COVID-19 occurred in China." Compl. ¶5. Plaintiff further concedes the phrase "China Virus," as used by President Trump, means only that the virus "comes from China." Compl. ¶3, 29, 31, 124,

**W W W . B I N N A L L . C O M**

Case 1:21-cv-04548-JGK   Document 19   Filed 11/12/21   Page 2 of 3

Page 2

129. The Center for Disease Control and Prevention has confirmed this fact. Center for Disease Control and Prevention, *Identifying the source of the outbreak*, (July 1, 2020) https://www.cdc.gov/coronavirus/2019-ncov/science/about-epidemiology/identifying-source-outbreak.html (stating, "The novel (new) coronavirus that *first appeared in China* had never been seen before (emphasis added)). The timing of the statement is irrelevant. Plaintiff has, therefore, failed to state a claim for defamation *per se* because the phrasing it complains of is not a false statement.

Plaintiff failed to state a claim for intentional or negligent infliction of emotional distress. "A claim for intentional infliction of emotional distress requires a plaintiff to plead: '(1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress.'" *Ogbon*, 2011 U.S. Dist. LEXIS 11615, *15 (internal citations omitted); *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014).

Plaintiff made only bare, conclusory statements alleging these claims. Compl., ¶¶ 205, 206, 209, 211, 216. Plaintiff alleges no facts to support its legal conclusions concerning the extreme nature of President Trump's conduct, the causal relationship, and the alleged severe emotional distress. Further, Plaintiff repeatedly refers to President Trump only in his official capacity when alleging these claims. Compl. ¶¶ 203-04, 207.[1] Plaintiff, therefore, failed to state a claim for intentional or negligent infliction of emotional distress, which has the same legal standard.

### b. First Amendment Jurisprudence

The First Amendment protects against content-based prohibitions on speech. *RAV v. City of St. Paul*, 505 U.S. 377, 382 (1992). From the sacred to the profane, United States citizens have the right to speak their mind, no matter the offense or disagreement it may cause; that is the price of the freedom guaranteed by the First Amendment. 538 U.S. at 388 (Thomas, J., *dissenting*); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). It is a price worth paying because "[s]peech is an essential mechanism of democracy." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010).

Plaintiff has gone a step further than content-based prohibitions attacking only President Trump's *phrasing*. Plaintiff admitted the accuracy of President Trump's statement as far as President Trump's statement that he used the phrase to denote the virus's origin. *Compare* Compl. ¶ 5 ("Had [President Trump] really wanted to be accurate, the accurate statement would have been 'the first outbreak of the COVID-19 occurred in China.") with Compl. ¶ 3, 29, 31, 124, 129 (stating President Trump explained his use of "China Virus" meant only that the virus "comes from China."). As discussed above, the Center for Disease Control and Prevention has confirmed this fact.

### c. New York State Anti-SLAPP Statute

This lawsuit is aimed at chilling and, perhaps more accurately, *conforming* President Trump's speech. New York, however, recently adopted new anti-SLAPP (Strategic Lawsuits Against Public Participation) provisions aimed directly at preventing this type of lawsuit. *See* N.Y. C.R.L. § 70-a(1); N.Y. C.R.L. § 76-a; CPLR § 3211(g). A lawsuit involving public participation is defined as a claim based on "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. C.R.L. §

---

[1] Plaintiff states President Trump "betrayed…the Office of the President's duty," "us[ed] his bully pulpit," and "sp[oke] from his position of highest executive authority."

Page 3

76-a. A motion to dismiss based on failure to state a claim in an anti-SLAPP lawsuit *must* be granted unless a plaintiff can show a "substantial basis in law." This new statute is no longer procedural in nature; it is substantive and applicable in this Court.[2]

Plaintiff's claim is *entirely* based on a comment during a nationwide interview concerning COVID-19. It is difficult to imagine a more public comment on a matter of public concern than a former president speaking on a nationwide pandemic. Thus, Plaintiff cannot show any basis, let alone a *substantial* basis, for this lawsuit against President Trump in his personal capacity.

### d. Plaintiff Lacks Standing to Bring this Lawsuit

In its Complaint, Plaintiff cites only the definition of the SPEECH Act, 28 U.S.C. § 4101, and the diversity jurisdiction statute, 28 U.S.C. § 1332. Plaintiff lacks jurisdiction under 28 U.S.C. § 4101 as that statute does not confer jurisdiction on this Court for any of the matters alleged by Plaintiffs.

The diversity jurisdiction statute requires complete diversity of the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. At least one of these requirements is not met here. Plaintiff appears to allege it represents all 22.9 million Asian American and Pacific Islanders living in the United States. If so, presumably, at least one of those 22.9 million people lives in Florida, eliminating diversity. If, as would be more appropriate, Plaintiff alleges to represent only members of its Chinese American Coalition, Plaintiff failed to allege facts leading the Court to believe it has a membership exceeding 75,000. In keeping with Plaintiff's $1 apology per member, Plaintiff would need at least 75,001 members to satisfy the jurisdictional threshold.

Plaintiff also lacks standing because it fails to meet the requirements of associational standing. "An association has standing to bring suit on behalf of its members when its members would have standing to sue…, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members' participation." *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 268 (2015) (internal citations omitted). Here, Plaintiff has failed to allege *any* member of its coalition has standing to sue. Plaintiff has failed to allege its organization's purpose; thus, the interests at stake cannot be germane to an unstated purpose. And Plaintiff is seeking monetary damages that need individualized proof; relief that requires individual members' participation in the lawsuit.

### III. Conclusion

President Trump respectfully requests this Court grant it leave to file a Motion to Dismiss on the grounds that (1) Plaintiffs have failed to state a cause of action upon which relief may be granted, (2) the First Amendment jurisprudence and anti-SLAPP laws forbid this action, and (3) Plaintiff lacks standing to bring these claims.

Respectfully,

Jesse R. Binnall
*Attorney for President Trump, as a private citizen*

Peter H. Tilem
*Attorney for President Trump, as a private citizen*

---

[2] Although the Second Circuit in *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020). Has cast some doubt on the use of some provisions of New York's Anti-SLAPP law in Federal Court, New York's New Anti-SLAPP law was signed into law in November 2020, after *La Liberte* was decided and there are no known decisions in Federal Court that have discussed the new law.