UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

CHINESE AMERICANS CIVIL
RIGHTS COALITION, INC.,

                      Plaintiff,

       -against-

DONALD J. TRUMP,

                    Defendant.

_____

1:21-cv-04548 (JGK)

<u>MEMORANDUM OF LAW
IN SUPPORT OF
MOTION TO DISMISS</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ I

TABLE OF AUTHORITIES ............................................................................... II

BACKGROUND .................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.    Plaintiff Failed to Plead Subject Matter Jurisdiction Over Plaintiff's Claims. 3

    a.   Plaintiff improperly plead subject matter jurisdiction. ..................................... 3
    b.   Plaintiff lacks associational standing. ............................................................. 4

II.    This Court Lacks Personal Jurisdiction Over President Trump ..................... 5

    a.   The Court lacks general jurisdiction................................................................. 5
    b.   Personal jurisdiction is lacking under New York's long-arm statute. ............. 6

III.    Venue is improper in the Southern District of New York. ............................. 7

IV.    Plaintiff Fails to State any Claim Upon Which Relief May be Granted. ......... 7

    a.   Plaintiff fails to state a claim for defamation *per se*. ..................................... 8
    b.   Plaintiff fails to state a claim for intentional or negligent infliction of emotional distress. 13

V.    The First Amendment and New York State's anti-SLAPP law preclude Plaintiff's claims. .................................................................................. 19

    a.   New York Anti-SLAPP law precludes lawsuits, like this one, seeking to chill speech on matters of public concern. .............................................................. 22

CONCLUSION ................................................................................................... 24

CERTIFICATE OF COMPLIANCE ................................................................. 25

CERTIFICATE OF SERVICE .......................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Advanced Sleep Ctr., Inc., v. Certain Underwriters at Lloyd's,*

    2014 WL 2768801, *4 (E.D. La. 2014) ...................................................... 17

*Ala. Legis. Black Caucus v. Alabama,*

    575 U.S. 254, 268 (2015) .............................................................................. 4

*Am. Standard Sheet Metal Supply, Corp. v. 36 Ave. Inc.,*

    2019 WL 1440470 (N.Y. Gen. Term 2019) ............................................... 17

*American Radio Ass'n v. A.S. Abell Co.,*

    58 Misc. 2d 483 (N.Y. Sup. Ct. 1968) ........................................................ 6

*Anyanwu v. Columbia Broadcasting Sys.,*

    887 F. Supp. 690, 693 (1995) ...................................................................... 9

*Ashcroft v. Iqbal,*

    556 U.S. 662, 678 (2009) ......................................................................... 7, 8

*Barnett v. Countrywide Bank, FSB,*

    60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014) ................................................. 13

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 544, 555 (2007) ............................................................................. 8

*Boos v. Barry,*

    485 U.S. 312, 322 (1988) ............................................................... 14, 19, 20

*Cantor Fitzgerald, L.P. v. Peaslee,*

    88 F.3d 152, 157 (2d Cir. N.Y. 1996) .......................................................... 6

*Citizens United v. FEC,*

    558 U.S. 310, 339 (2010). ......................................................................... 21

*Coleman v. Grand,*

    523 F. Supp. 3d 244 (E.D.N.Y. 2021) ................................................. 19, 23

*Conrail v. Gottshall,*

    512 U.S. 532, 563 (1994) ......................................................................... 18

*Daimler AG v. Bauman,*

    571 U.S. 117, 132 (2014) ........................................................................... 5

*Diaz v. NBC Universal, Inc.,*

    536 F. Supp. 2d 337, 343 (2008) ........................................................... 8, 9

*Dillon v. City of New York,*

    261 A.D.2d 34, 38 (N.Y. App. Div. 1999).............................................. 8, 10

*Dynamic Image Techs. v. United States,*

    18 F. Supp. 2d 146, 151 (D. P.R. 1998) ................................................... 17

*FDIC v. Husley,*

    22 F.3d 1472, 1489 (10th Cir. 1994) ........................................................ 17

*Garrison v. La.,*

    379 U.S. 64 (1964). ................................................................................. 19

*Gasperini v. Ctr. for Humanities, Inc.,*

    518 U.S. 415, 427 (1996) ......................................................................... 23

*Goodyear Dunlop Tires Operation, S.A. v. Brown,*

564 U.S. 915, 924 (2011) ........................................................................... 5

*Hertz Corp. v. Friend,*

559 U.S. 77, 92–93, (2010) ........................................................................ 4

*HM Hotel Props. v. Peerless Indem. Ins. Co.,*

874 F. Supp. 2d 850, 854 (D. Ariz. 2012) ................................................ 17

*Hustler Magazine v. Falwell,*

485 U.S. 46 (1988) ............................................................................... 14, 20

*Idema v. Wager,*

120 F. Supp. 2d 361, 368 (2000) .................................................... 10, 11, 19

*Jesal Corp. v. Main St. Bank,*

No. 1:08-CV-0109-CAP-LTW, 2009 WL 10711976, at *11 (N.D. Ga. Jan. 27, 2009)

.................................................................................................................. 17

*Kasavana v. Vela,*

172 A.D.3d 1042, 1044 (2019) .................................................................. 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*

673 F.3d 50, 60 n. 9 (2d Cir. 2012) ........................................................... 5

*Mahanoy Area Sch. Dist. v. B.L.,*

141 S. Ct. 2038, 2046 (2021). ................................................................... 20

*Metro-North Commuter R.R. v. Buckley,*

521 U.S. 424, 445 (J. Ginsberg, concurring in part) (1997) .................... 18

*Mitchell v. Giambruno*,

    35 A.D.3d 1040, 826 N.Y.S.2d 788, 789 (N.Y.App.Div.2006) ................................... 13

*Mortise v. United States*,

    102 F.3d 693, 696 (2nd Cir. 1996) ........................................................................ 15

*New York Times Co. v. Sullivan*,

    376 U.S. 254 (1964). ............................................................................................ 19

*Ogbon v. Beneficial Credit Servs.*,

    No. 10 CV 03760 GBD, 2011 WL 347222, at *5 (S.D.N.Y. Feb. 1, 2011) .... 8, 10, 13,

    14, 15

*Rankin v. McPherson*,

    483 U.S. 378, 387 (1987) ..................................................................................... 20

*Snyder v. Phelps*,

    562 U.S. 443 (2011). ................................................................................ 13, 19, 20, 21

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,

    303 U.S. 283, 289, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938)................................4

*Texas v. Johnson*,

    491 U.S. 397, 414 (1989) ..................................................................................... 21

*United States v. Ballard*,

    322 U.S. 78, 95 (1944) ......................................................................................... 21

*Virginia v. Black*,

    538 U.S. 343, 358 (2003) ..................................................................................... 20

*Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*,

124 F. Supp.3d 301, 307 (S.D.N.Y. 2014) ................................................... 6

## Statutes

28 U.S.C. § 1391(b) ........................................................................................ 8

N.Y. C.R.L. § 70-a(1) ............................................................................. 26, 27

N.Y. C.R.L. § 76-a ........................................................................................ 26

## Other Authorities

Fox News, *Trump urges Americans to get the COVID vaccine in Fox News exclusive,*

YOUTUBE (March 16, 2021) www.youtube.com/watch?v=UM9JvYjPW6o&t=357s . 3

*Identifying the source of the outbreak,* CENTERS FOR DISEASE CONTROL AND

PREVENTION (July 1, 2020), https://www.cdc.gov/coronavirus/2019-

ncov/science/about-epidemiology/identifying-source-outbreak.html ..................... 11

RESTATEMENT (SECOND) OF TORTS § 558 ............................................. 10, 12

## Rules

CPLR § 302(2) ............................................................................................... 6

CPLR § 302(3) ............................................................................................... 6

CPLR § 3211(g) ........................................................................................... 31

In its Complaint, Plaintiff accurately quoted President Trump when it pointed out that he said "[i]t is very important that we totally protect our Asian American community in the United States, and all around the world. They are amazing people, and the spreading of the Virus....is NOT their fault in any way, shape, or form. They are working closely with us to get rid of it. WE WILL PREVAIL TOGETHER!" Compl., ¶ 31. Yet, incredibly, Plaintiff still brings this lawsuit asking the Court to adjudicate whether Americans are legally obligated to use World Health Organization approved terminology when engaged in political discourse. The statements at issue are neither defamatory nor otherwise actionable. Indeed, this action is a poor use of judicial resources and should never have been filed. It should be promptly dismissed, with prejudice.

## BACKGROUND

President Donald J. Trump served as the 45th President of the United States. During his presidency, the United States became entangled in a worldwide pandemic that still haunts us. President Trump and his administration kept the American public informed about the pandemic through a variety of media platforms, including press conferences, social media posts, and interviews. During those communications, President Trump referred to the novel coronavirus under various names, including the "China Virus."

As President Trump has explained several times, he did so because the virus was then believed to have originated from a laboratory in Wuhan, China. Compl., ¶ 3.

1

Although Plaintiff's Complaint contains lengthy descriptions of statements dissatisfying to Plaintiff, its case against President Trump, in his individual capacity, arises out of a single comment during a Fox News interview on March 16, 2021. Compl., ¶¶ 2, 37. In this interview, President Trump used the phrase "China Virus" while discussing the stagnation of the United States' economy since President Biden took office.[1] Compl., ¶ 37.

On that same day, the Chinese American Civil Rights Coalition, Inc. ("Plaintiff") was formed in New York state. Two months later, Plaintiff brought this suit against President Trump in both his official capacity as the 45th President of the United States[2] and his individual capacity "as a private citizen for continuingly

---

[1] President Trump said, "when we got hit by the, as I call it the 'China Virus,' COVID…it [the economy] obviously went down along with every other economy." Fox News, *Trump urges Americans to get the COVID vaccine in Fox News exclusive,* YOUTUBE (March 16, 2021) www.youtube.com/watch?v=UM9JvYjPW6o&t=357s. The specific comments Plaintiff references begin at 4:55 of the video.

[2] The United States Department of Justice is representing President Trump as to Plaintiff's allegations against him in his official capacity.

making defamatory statements since he left the White House on Jan[uary] 20, 2021."[3]

Compl. at 1.

## ARGUMENT

This lawsuit fails for a number of reasons, including lack of subject matter jurisdiction, lack of personal jurisdiction, and the failure to state a claim, and the protections of the First Amendment. For these reasons, it should be dismissed, with prejudice.

### I.     Plaintiff Failed to Plead Subject Matter Jurisdiction Over Plaintiff's Claims.

#### a.  Plaintiff improperly plead subject matter jurisdiction.

Plaintiff attempts but fails to allege that this Court has jurisdiction over this matter pursuant to diversity of citizenship.   Diversity jurisdiction requires (1) complete diversity of citizenship of the parties and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. Plaintiff must affirmatively plead the basis of the Court's subject matter jurisdiction. Fed. R. Civ. P. 8(a)(1). For diversity of citizenship purposes, a corporation is a citizen of the state in which it is incorporated

---

[3] The undersigned counsel represents President Trump only in his individual capacity. As such, this Motion to Dismiss will address only those allegations aimed at President Trump in his individual capacity.

and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Since a corporate plaintiff must plead subject matter jurisdiction, that means that it must plead both the state of incorporation *and* the state of its principal place of business.  The principal place of business refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93, (2010).

Here, Plaintiff alleges subject matter jurisdiction in an unnumbered introductory paragraph. In that paragraph it alleges that it is incorporated in New York, but it fails to allege its principal place of business. That is insufficient.

Moreover, Plaintiff also fails to meet the amount in controversy requirement by simply asking for $1.00 per member of the AAPI community as an "apology." This assertion of damages is baseless; it is a legally certainty that Plaintiff's damages are less than $75,000, further depriving this Court of jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

### b. Plaintiff lacks associational standing.

"An association has standing to bring suit on behalf of its members when [1] its members would have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the

relief requested requires individual members' participation in the lawsuit." *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 268 (2015) (internal citations omitted).

Here, Plaintiff fails to allege it even has members, let alone that any member has individual standing to sue. Plaintiff also fails to allege its organization's purpose (if it has one other than to sue President Trump). And Plaintiff seeks damages requiring individualized proof and individual members' participation. In short, Plaintiff asserts standing it does not have. Because Plaintiff lacks standing, this Court lacks jurisdiction over Plaintiff's lawsuit and must dismiss it.

## II.    This Court Lacks Personal Jurisdiction Over President Trump

### a.  The Court lacks general jurisdiction.

The Court may assert general personal jurisdiction over an individual only when the defendant has contacts with the forum so continuous and systematic as to render him at home in New York. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 n. 9 (2d Cir. 2012). Continuous activities within a state, unrelated to the specific litigation, are insufficient to demand a defendant be subject to the forum's personal jurisdiction. *Daimler AG v. Bauman,* 571 U.S. 117, 132 (2014) (internal citations omitted).

General jurisdiction is typically shown through domicile. *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 924 (2011). President Trump is not home in New York; he is a Floridian. And this fact is not disputed by either party. Compl., at 3. There is no basis to exercise general personal jurisdiction over President Trump.

b. **Personal jurisdiction is lacking under New York's long-arm statute.**

Plaintiff's claims also fail to satisfy New York's long-arm statute. To have personal jurisdiction over a non-domiciliary, an action must arise out of (1) a defendant transacting business, (2) a tortious act within the state or (3) outside of the state, or (4) ownership, use, or possession of real property within the state. CPLR § 302. Further, it is a plaintiff's burden to show a court has personal jurisdiction over each defendant. *Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, 124 F. Supp.3d 301, 307 (S.D.N.Y. 2014).

This action does not arise under any action taken in New York. Further, defamation is expressly excluded under CPLR § 302(2). *American Radio Ass'n v. A.S. Abell Co.,* 58 Misc. 2d 483 (N.Y. Sup. Ct. 1968) (stating, "[j]urisdiction may not be obtained under the…'long-arm' statute in defamation actions based on tortious acts."). This exclusion summarily eliminates Plaintiff's first claim: defamation.

This exclusion also eliminates Plaintiff's claims of intentional and negligent infliction of emotional distress. *Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152, 157 (2d Cir. N.Y. 1996). A "[p]laintiff[] may not evade the statutory exception by recasting their cause of action as something other than defamation" when those claims are based on defamatory comments. *Id.* (affirming that because all the plaintiffs' claims were based on defamatory statements, the action fell within the exceptions in CPLR § 302(2) and (3)). Here, Plaintiff's intentional and negligent infliction of emotional distress claims are based solely on President Trump's supposed defamatory comment. These claims, therefore, sound in defamation and are excluded.

Plaintiff fails to plead personal jurisdiction, nor is personal jurisdiction permitted under New York's long-arm statute. Therefore, this Court lacks personal jurisdiction over President Trump.

### III.    Venue is improper in the Southern District of New York.

An action in federal court may be brought where (1) "any defendant resides," (2) "a substantial part of the events or omissions giving rise to the claim occurred," or (3) "any defendant is subject to personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Venue, here, is improper under each circumstance.

First, President Trump is a resident of Florida. *See* Compl., at 3. Second, Plaintiff complains of President Trump's speech. Yet, Plaintiff fails to allege any of his offending speech occurred in New York. Thus, no part, let alone a substantial part, of the speech giving rise to Plaintiff's claims occurred in the state.  Third, this Court lacks personal jurisdiction over President Trump. Venue is improper.

### IV.    Plaintiff Fails to State any Claim Upon Which Relief May be Granted.

Plaintiff's allegations of defamation and intentional and negligent infliction of emotional distress fail in every respect. These claims are brought by a party not injured, for a phrase constitutionally protected, and for the benefit of a group not targeted.

A plaintiff fails to state a claim when it fails to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A claim is 'plausible on

its face' only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* To do this, a complaint needs more than bare, conclusory allegations merely consistent with a defendant's liability. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not have extensively "detailed factual allegations, but it require[s] more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Here, Plaintiff failed to meet this standard.

### a. Plaintiff fails to state a claim for defamation *per se*.

Plaintiff alleges the phrase "China virus" is defamatory *per se*. Not so. In order to state a claim for defamation, Plaintiff must show "[1] a false statement, [2] published without privilege or authorization to a third party, [3] constituting fault as judged by, at a minimum, a negligence standard, and [4] it must either cause special harm or constitute defamation per se." *Ogbon v. Beneficial Credit Servs.,* No. 10 CV 03760 GBD, 2011 WL 347222, at *5 (S.D.N.Y. Feb. 1, 2011) (citing *Dillon v. City of New York,* 261 A.D.2d 34, 38 (N.Y. App. Div. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 558)).

### 1.   *The group libel doctrine bars Plaintiff's claim of generalized defamation.*

Under the group libel doctrine, a plaintiff cannot cry defamation when it is a group, not an individual, referenced. *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 343 (2008) (internal citations omitted). Only when a plaintiff demonstrates he *specifically* was referenced can he recover. *Id.* (internal citations omitted).

New York Courts "have not set a particular group number above which defamation of a group member is not possible." *Diaz v. NBC Universal, Inc.,* 536 F. Supp. 2d at 343 (internal citations and quotation marks omitted). That number, though, is below sixty. *Id.* (noting "the absence of 'any cases where individual members of groups larger than sixty have been permitted to go forward'") (citing *Anyanwu v. Columbia Broad. Sys.,* 887 F. Supp. 690, 693 (1995)). A group of 22.9 million AAPI is well over that threshold.

Even assuming *arguendo* Plaintiff meant to specify the putative class here is only its own members, and not all 22.9 million AAPI living in the United States, Plaintiff still cannot claim 'group defamation': no single member of Plaintiff or Plaintiff itself can fairly say the comment was about him or it specifically. Plaintiff complains of a single use of the phrase "China Virus." Nowhere in that phrase, or the surrounding context, can Plaintiff pinpoint anything connecting it to an individual member of its organization and a harm to that person. Therefore, the group libel doctrine bars this claim before even addressing the elements.

### 2. Plaintiff's defamation per se claim fails because "China Virus" is not a false statement.

On July 1, 2020, the Centers for Disease Control and Prevention (CDC) confirmed the first case of COVID-19 originated in China. *Identifying the source of the outbreak,* CENTERS FOR DISEASE CONTROL AND PREVENTION (July 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/science/about-epidemiology/identifying-source-outbreak.html (stating COVID-19 "first appeared in China"). Plaintiff even

admits the same in its Complaint. Compl., at ¶¶ 3, 5, 128 ("The accurate statement would have been … the *first outbreak of this coronavirus took place in China.*" (emphasis added)).[4]

Plaintiff claims the speech is defamatory, thus false; yet, in the same Complaint admits "the first outbreak of the COVID-19 occurred in China." Compl. ¶5. Plaintiff further concedes the phrase "China Virus," as used by President Trump, means only that the virus "comes from China." Compl., ¶3, 29, 31, 124,

### 3. *Plaintiff fails to allege President Trump's speech caused special damages.*

To rise to the level of defamation *per se*, the offending speech must "cause special harm." *Ogbon v. Beneficial Credit Servs.,* No. 10 CV 03760 GBD, 2011 WL 347222, at *5 (S.D.N.Y. Feb. 1, 2011) (emphasis added) (citing *Dillon v. City of New York,* 261 A.D.2d 34, 38 (N.Y. App. Div. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 558)).

Special harm "consist[s] of loss of something having economic or pecuniary value…flow[ing] directly from the injury to reputation by defamation; not from the

---

[4] Plaintiff also, confusingly, alleges the origin of the virus was, and is, unknown. Compl., at ¶ 128. That allegation completely contradicts the CDC's official statement and renders Plaintiff's Complaint internally inconsistent. *See Identifying the source of the outbreak,* CDC*; compare* Compl. at ¶ 5 *with* Compl., at ¶ 128*.*

effects of defamation." *Idema v. Wager*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000) (internal citations omitted). Special damages must be specifically plead; "a general allegation of a dollar amount" will not do. *Id.* Failure to "fully and accurately define[] with sufficient particularity" the loss is fatal. *See id.* (internal citation omitted).

Here, Plaintiff fails to plead specific damages. Plaintiff merely states generally how members of the Chinese American and AAPI communities have allegedly been affected by President Trump's speech. Plaintiff fails to identify any actual losses or name any individual losses suffered by it or any of its members. Plaintiff relies only on an arbitrary number, which Plaintiff alleges represents one dollar per Chinese American and AAPI living in the United States. This is not due to any actual or specific harm done to these individuals or to Plaintiff itself. This arbitrary number is meant "as an apology to every" AAPI, apparently including those not members of Plaintiff. Compl., ¶ 219(a). This manner of alleging special damages is inappropriate.

Even digging below the semantic surface, President Trump did not cause any special harm to Plaintiff, nor has Plaintiff alleged any such causal relationship. Plaintiff alleges, at most, that President Trump's "use of this term...ha[s] led to a noticeable incline in hate incidents." Compl., ¶ 97. Plaintiff then continues with a litany of anecdotal incidents in no way connected to President Trump's March 16, 2021, comment. Compl., ¶¶ 100-05, 109-11. In fact, of those incidents where Plaintiff bothered to specify a date, only two occurred *after* President Trump's comment. Compl., ¶¶ 104, 106. Of those two, neither connects back to his "China Virus" comment. No one should be targeted because of their race or ethnicity, but any

11

attempt to blame President Trump for the actions of others is legally and factually baseless.

Plaintiff alleges no causal relationship between President Trump's comment and any harm to Plaintiff. Plaintiff's attempts at connecting any incidents of harm back to President Trump's comment are conclusory in nature with zero factual support or are copied and pasted portions of a study published only weeks after March 16, 2021. Compl., ¶¶ 161-72, 197. As such, Plaintiff fails to allege President Trump's speech caused special damages or that any special damages exist in this case.

### 4.    *The phrase "China Virus" does not rise to the level of defamatory* **per se***.*

"China Virus" is not defamatory *per se*. A defamatory *per se* statement must "(1) charge[] the plaintiff with a serious crime; (2) tend[] to injure the plaintiff in...his trade... (3) impute[] to the plaintiff a loathsome disease; or (4) impute[] unchastity to a woman." *Kasavana v. Vela*, 172 A.D.3d 1042, 1044 (2019). President Trump's use of "China Virus", particularly during his nationally televised interview, does none of that.

The phrase "China Virus" does not charge Plaintiff with a serious crime. Nor does it injure Plaintiff in its trade. It does not impute a loathsome disease onto Plaintiff. The phrase "China Virus," at most, claims a virus came from China; not that all Chinese Americans are suffering from or causing COVID-19. And, lastly, "China Virus" clearly does not impute unchastity to Plaintiff.

The phrase "China Virus" clearly denotes the origin of a virus, confirmed by the CDC, nothing more. The phrase "China Virus" does not rise to the level of

defamatory *per se* nor does Plaintiff plausibly allege defamation; therefore, Plaintiff's entire claim of defamation should be dismissed.

### b. Plaintiff fails to state a claim for intentional or negligent infliction of emotional distress.

"A claim for intentional infliction of emotional distress requires plaintiff plead: '(1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress.'" *Ogbon v. Beneficial Credit Servs.*, No. 10 CV 03760 GBD, 2011 WL 347222, at *5 (S.D.N.Y. Feb. 1, 2011) (quoting from *Mitchell v. Giambruno,* 35 A.D.3d 1040, 826 N.Y.S.2d 788, 789 (N.Y.App.Div.2006)); *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014). Plaintiff fails to plausibly allege intentional or negligent infliction of emotional distress.

### 1. Plaintiff fails to allege extreme and outrageous conduct.

President Trump's speech was not extreme nor outrageous. Extreme and outrageous conduct is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 392 (2014) (internal citations omitted).

Constitutionally protected speech is not outrageous. *See Snyder v. Phelps,* 562 U.S. 443, 458-59 (2011) (setting aside a jury verdict imposing liability for a claim of intentional infliction of emotion distress because "the whole context of how and where

[the church] chose to say it [the public speech], is entitled to 'special protection' under the First Amendment, and that protection cannot be overcome by a jury finding that the picketing was outrageous"); *Boos v. Barry,* 485 U.S. 312, 322 (1988) (stating "the 'outrageousness' standard...is so inherently subjective that it would be inconsistent with 'our longstanding refusal to [punish speech] because the speech in question may have an adverse emotional impact on the audience" (citing *Hustler Magazine v. Falwell,* 485 U.S. 46, 55 (1988)). It is not so extreme in degree, as to go beyond all possible bounds of decency. *Id.* President Trump uttered the phrase "China Virus" to refer to a virus which originated from China. That is neither extreme nor outrageous.

### 2. *Plaintiff fails to allege President Trump's speech intended harm to Plaintiff.*

Plaintiff fails to allege President Trump intended to cause severe emotional distress to Plaintiff. Where the infliction of emotional distress is alleged to be intentional, a plaintiff must allege a defendant's conduct was done with the specific intent to cause emotional harm. *Ogbon v. Beneficial Credit Servs.*, No. 10 CV 03760 GBD, 2011 WL 347222, at *5 (S.D.N.Y. Feb. 1, 2011).

Plaintiff alleges no such intent. When claiming intentional infliction of emotional distress, Plaintiff alleges President Trump's speech was made with "reckless disregard of whether such conduct would cause Chinese Americans to suffer emotional distress." Compl., ¶ 205. "[R]eckless disregard" falls well below the intentional standard. As such, Plaintiff's intentional infliction of emotional distress claim fails.

### 3.    *Plaintiff fails to state a claim for negligent infliction of emotional distress.*

Where the infliction of emotional distress is alleged to be negligent, a plaintiff must show the defendant's conduct negligently caused "an unreasonable risk of bodily harm…and such conduct is a substantial factor in bringing about [emotional] injuries to the plaintiff." *Ogbon v. Beneficial Credit Servs.*, No. 10 CV 03760 GBD, 2011 WL 347222, at *6 n. 7 (S.D.N.Y. Feb. 1, 2011). To accomplish this, Plaintiff may proceed under one of two theories: (1) the "bystander" theory or (2) the "direct duty" theory. *Id.* at *5 (citing *Mortise v. United States*, 102 F.3d 693, 696 (2nd Cir. 1996)).

Under the "bystander" theory, a plaintiff can only recover if "(1) [it] is threatened with physical harm as a result of defendant's negligence; and (2) consequently [it] suffers emotional injury from witnessing the death or serious bodily injury of a member of [its] immediate family." *Mortise,* 102 F.3d at 696 (internal citations omitted). Under the "direct duty" theory, a plaintiff can only recover if it "suffers an emotional injury from defendant's breach of duty which unreasonably endangered [its] own physical safety." *Id.* Plaintiff's meet neither standard. Under the "bystander" theory, Plaintiff does not (and cannot) allege any such threat occurred.

Plaintiff's claim also fails under the "bystander" theory because Plaintiff did not suffer emotional harm from witnessing death or serious injury of one of its immediate family members. For one, Plaintiff is an entity; thus, it has no family. And, further, Plaintiff fails to allege any of its members, or members of the AAPI communities, suffered emotional harm from witnessing death or serious injury of any

of their immediate family members. Therefore, Plaintiff's negligent infliction of emotional distress claim fails under the "bystander" theory.

Plaintiff's claim also fails under the "direct duty" theory for similar reasons. Plaintiff alleges, in conclusory fashion, President Trump owes a duty to "Chinese Americans such as members of the Plaintiff organization in that they would not be racially discriminated against." Compl., ¶ 213. But President Trump owes no such duty; President Trump cannot have a duty to ensure no minority is discriminated against by any person ever. Such a duty would be unduly burdensome and quite impossible to police, enforce, or even accomplish. Therefore, Plaintiff's negligent infliction of emotional distress claim fails under the "direct duty" theory.

**4.    *Plaintiff fails to allege a sufficient causal relationship between Plaintiff's harm, to the extent there is any alleged, and President Trump's conduct.***

Plaintiff's claims fail because President Trump's speech has no causal relationship to Plaintiff's alleged emotional harm. Concerning its claim of intentional infliction of emotional distress, Plaintiff alleges only that President Trump "planted the seeds to create a public environment that is hostile to Plaintiff's community." Compl., ¶ 207. Concerning its claim of negligent infliction of emotional distress, Plaintiff alleges, in conclusory fashion, President Trump's conduct "proximately caused the emotional distress suffered." Compl., ¶ 216.

Plaintiff's allegations are either too far removed from any of President Trump's actual conduct or completely conclusory. Compl., ¶¶ 206, 216 (stating "[President Trump]'s…conduct indeed has caused…emotional distress" and "[President Trump]'s

16

conduct proximately caused the emotional distress"). In both instances and throughout its Complaint, Plaintiff fails to adequately allege causation.

5.   *Plaintiff fails to allege severe emotional distress.*

Plaintiff suffering severe emotional distress is a legal impossibility. Numerous courts, and common sense, dictate "corporations such as Plaintiff[] cannot suffer emotional distress as a matter of law." *Advanced Sleep Ctr., Inc., v. Certain Underwriters at Lloyd's,* 2014 WL 2768801, *4 (E.D. La. 2014);**Error! Bookmark not defined.** *FDIC v. Husley*, 22 F.3d 1472, 1489 (10th Cir. 1994) ("[A] corporation lacks the cognizant ability to experience emotions, a corporation cannot suffer emotional distress."); *HM Hotel Props. v. Peerless Indem. Ins. Co.,* 874 F. Supp. 2d 850, 854 (D. Ariz. 2012) ("[A] corporate plaintiff cannot suffer emotional distress"); *Dynamic Image Techs. v. United States*, 18 F. Supp. 2d 146, 151 (D. P.R. 1998) ("[T]here is no legal principle that a corporation...can suffer from an intentional infliction of emotional distress"); *Jesal Corp. v. Main St. Bank*, No. 1:08-CV-0109-CAP-LTW, 2009 WL 10711976, at *11 (N.D. Ga. Jan. 27, 2009) ("[T]his Court is hard-pressed to understand how a business entity...can suffer emotional distress."); *Am. Standard Sheet Metal Supply, Corp. v. 36 Ave. Inc.,* 2019 WL 1440470 (N.Y. Gen. Term 2019) ("Obviously, only an individual can suffer emotional distress, not a corporation.").

Even so, Plaintiff continues, apparently seeking to implicitly represent all AAPI living in the United States or belonging to its Coalition. Plaintiff alleges those it represents are "the victims of anti-Asian Americans [sic] incidents...[and] have expressed feelings of hurt, angry, [sic] unsafe, [sic] intimidated, [sic] and fear."

17

Compl., ¶ 207. Plaintiff further alleges its members (which it fails to identify) "fear for their lives." *Id.* at ¶ 208. As troubling as mere words may be to those members, uncomfortable emotions do not rise to the level of severe emotional distress. *Metro-North Commuter R.R. v. Buckley*, 521 U.S. 424, 445 (J. Ginsberg, concurring in part) (1997) (finding anger and fear do not constitute severe emotional distress).

The Supreme Court mandates emotional distress must be severe to ensure only "meritorious" claims are brought, not "the feigned or frivolous." *Conrail v. Gottshall*, 512 U.S. 532, 563 (1994). The plaintiff in *Conrail* brought one such "meritorious" claim of severe emotional distress. That plaintiff, unlike Plaintiff here, suffered from "emotional distress, diagnosed by three doctors as major depression and posttraumatic stress disorder." That plaintiff "was institutionalized for three weeks, followed by continuing outpatient care; he lost 40 pounds; he suffered from 'suicidal preoccupations, anxiety, sleep onset insomnia, cold sweats,…nausea, physical weakness, repetitive nightmares and a fear of leaving home." *Id.* at 563-64.

### 6. *Plaintiff fails to allege intentional infliction of emotional distress against President Trump's individual capacity.*

Plaintiff repeatedly refers to President Trump "betray[ing]…the Office of the President's duty," "using his bully pulpit," and "speaking from his position of highest executive authority." Compl., ¶¶ 203-04, 207. While it is unclear from the Complaint whether Plaintiff sought to bring the claim of intentional infliction of emotional distress against President Trump in his individual capacity, Plaintiff nevertheless fails to do so.

18

V.   **The First Amendment and New York State's anti-SLAPP law preclude Plaintiff's claims.**

Plaintiff alleges it "brings this suit to repudiate [President Trump's] defamation." Compl., ¶ 10. Yet, Plaintiff plainly seeks to prevent President Trump from delivering certain remarks publicly. This runs afoul of the protections of both the First Amendment and the New York Anti-SLAPP law. Further, granting President Trump's Motion to Dismiss here has "particular value" because it avoids the "chilling effect of protracted litigation" for these types of claims. *See Coleman v. Grand*, 523 F. Supp. 3d 244 (E.D.N.Y. 2021).  And "[c]ompeting with the individual's right to protect one's reputation [is] the constitutional guaranteed First Amendment freedom[] of speech." *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (2000) (internal citations omitted).  Freedom of speech is vital to our republican form of government. *See Garrison v. La.*, 379 U.S. 64, 75 (1964); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *Snyder v. Phelps*, 562 U.S. 443, 461 (2011); *Boos v. Barry*, 485 U.S. 312, 322 (1988).

Longstanding First Amendment jurisprudence "reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (citing *Sullivan*, 376 at 270). This is especially true of speech pertaining to matters of public concern. Speech pertaining to matters of public concern "relat[e] to any matter of political, social, or other concern to the community'…or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder*, 562 U.S. at 453 (internal citations omitted). Such speech is "at the heart of

the First Amendment's protection" and "the essence of self-government." *Id.* at 451-52 (internal citations omitted); *Garrison v. La.*, 379 U.S. 64, 75 (1964).

Speech on matters of public concern needs to be heard. This speech cannot be suppressed simply because Plaintiff finds it "inappropriate or controversial," "insulting, and even outrageous," "caustic," "offensive," "misguided," "hurtful," or "disagreeable." *Snyder*, 562 U.S. at 453 (citing *Rankin v. McPherson*, 483 U.S. 378, 387 (1987)) (finding placards reading "God Hates the USA/Thank God for 9/11," "America is Doomed," "Thank God for IEDs," "Thank God for Dead Soldiers," and "God Hates You" were all statements of public concern and thus protected under the First Amendment); *Hustler Magazine v. Falwell*, 485 U.S. 46, 54 (1988) (finding caustic, satirical depictions "play a prominent role in public and political debate").

The courts have stood firm "refus[ing] to [punish speech] because the speech in question may have an adverse emotional impact on the audience." *Barry,* 485 U.S. at 322 (citing *Hustler Magazine*, 485 U.S. at 55 (internal citations omitted)). In fact, our Republic "only works if…[t]hat protection [] include[s] the protection of unpopular ideas, for popular ideas have less need for protection." *Mahanoy Area Sch. Dist. V. B.L.*, 141 S. Ct. 2038, 2046 (2021). Failing to protect unpopular, provocative, or controversial speech would eliminate the indispensable "breathing space" needed for public debate and discourse. *Snyder* at 458 (citing *Barry*, 485 U.S. at 322).

The gravamen of the First Amendment is "to allow 'free trade in ideas' – even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black,* 538 U.S. 343, 358 (2003) (collecting cases). From

"the sacred" to "the profane," with "a good deal of rubbish" in between, United States citizens have the right to speak their mind, no matter the offense or disagreement it may cause – that is "the price" of the freedom guaranteed by the First Amendment. *United States v. Ballard,* 322 U.S. 78, 95 (1944) (Jackson, J., *dissenting*); *Virginia,* 538 U.S. at 388 (2003) (Thomas, J., *dissenting*); *see Texas v. Johnson,* 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). This is a price worth paying because "[s]peech is an essential mechanism of democracy." *Citizens United v. FEC,* 558 U.S. 310, 339 (2010). In short, without freedom of speech, especially so on issues of public concern, our representative republic would fail. Therefore, courts have repeatedly reaffirmed the importance of protecting public, political speech.

President Trump's speech here lies firmly within the protection of the First Amendment. President Trump's speech occurred on a nationally televised news program and discussed the economy, a worldwide pandemic, and how both were affecting the daily lives of the American people.

Plaintiff insinuates that President Trump's speech was "inappropriate or controversial," "insulting, and even outrageous," "caustic," "offensive," "misguided," "hurtful," or "disagreeable." Even if true, however, that does not change the protection his speech is afforded under the First Amendment because the entirety, and "overall thrust," of President Trump's message was on matters of very public concern. *See Snyder,* 526 U.S. at 454 (stating that "even if a few of the signs…were viewed as

21

containing messages related to [the plaintiff]…that would not change the fact that the *overall thrust* and dominant theme of Westboro's demonstration spoke to broader public issues" (emphasis added)).

Should Plaintiff's case move forward, it would threaten free, robust debate of public issues, interfere with meaningful public dialogue, and risk self-censorship on matters of public import. This result cannot stand in our form of self-government. Therefore, Plaintiff's lawsuit is precluded by the First Amendment. As such, President Trump's Motion to Dismiss should be granted and Plaintiff's claims should be dismissed with prejudice.

### a. New York Anti-SLAPP law precludes lawsuits, like this one, seeking to chill speech on matters of public concern.

Many states have heeded the Supreme Court's words and passed laws that protect the freedom of speech. With the First Amendment as a foundational backdrop, New York state recently amended its anti-SLAPP (Strategic Lawsuits Against Public Participation) provisions aimed directly at preventing lawsuits seeking to prevent or punish public participation. *See* N.Y. C.R.L. § 70-a(1); N.Y. C.R.L. § 76-a; CPLR § 3211(g).

An anti-SLAPP lawsuit—a lawsuit based on speech involving public petition or participation—is defined as a claim based upon "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. C.R.L. § 76-a. When a motion to dismiss based on failure to state a claim is filed in an anti-SLAPP lawsuit, as is done here, it *must* be granted unless the opposing

party demonstrates "a *substantial* basis in law or [the lawsuit] is supported by a *substantial* argument for an extension, modification, or reversal of existing law." CPLR § 3211(g) (emphasis added). Further, the opposing party's "costs and attorney's fees *shall* be recovered upon a demonstration…that the action…was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for an extension, modification, or reversal of existing law." N.Y. C.R.L. § 70-a(1)(a).

Plaintiff's Complaint lacks any basis in law, let alone a substantial basis. Plaintiff's claims against President Trump in his personal capacity are *entirely* based on public comment. As noted above, the single comment at issue was made on a nationally televised news program relating to issues of national importance. It is difficult to imagine communication more public or on a matter of higher public concern than a former President speaking on the economy, a worldwide pandemic, and how both affect the daily lives of the American people during an interview televised to millions.

The New York state anti-SLAPP law is applicable, here, in federal court. A "federal court[] sitting in diversity appl[ies] state substantive law and federal procedural law." *Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)) (internal quotation marks omitted). New York's anti-SLAPP law is "manifestly substantive." *Id.* at 258 (internal citations omitted). Since Plaintiff's claims cannot meet these standards,

they must be dismissed, and attorney's fees awarded to President Trump. N.Y. C.R.L.

§ 70-a(1)(a).

## CONCLUSION

For the above-stated reasons, President Trump requests this Court grant

President Trump's Motion to Dismiss, dismiss Plaintiff's Complaint with prejudice,

and award costs and attorney's fees in favor of President Trump.

Dated: Alexandria, VA               Respectfully submitted,
       January 7, 2022

                                     /s/ Jesse R. Binnall
                                     *Jesse R. Binnall
                                     THE BINNALL LAW GROUP, PLLC
                                     717 King Street, Suite 200
                                     Alexandria, Virginia 22314
                                     Tel: (703) 888-1943
                                     jesse@binnall.com
                                     * *Admitted Pro Hac Vice*

                                     Peter H. Tilem, NYSB PHT7750
                                     TILEM & CAMPBELL, PC
                                     188 E Post Road
                                     White Plains, New York 10601
                                     Tel: (914) 833-9785
                                     ptilem@tilemandcampbell.com

                                     *Attorneys for Donald J. Trump*

24

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies, pursuant to the Individual Practices of Judge John G. Koeltl Rule 2(D), this Memorandum of Law in Support of President Trump's Motion to Dismiss is in compliance with the word count limit prescribed in the rule. Counsel relied on Microsoft Word's Office 365 word processing system in order to count the words contained in the Memorandum of Law, exclusive of the caption, table of contents, table of authorities, and signature block, and the total was 5,823 words.

Dated:  Alexandria, VA          /s/ Jesse R. Binnall
       January 7, 2022          Jesse R. Binnall

## CERTIFICATE OF SERVICE

I certify that on January 7, 2022, a copy of the foregoing was filed with the Clerk using the Court's CM/ECF system, which will send a copy of all counsel of record.

/s/ Jesse R. Binnall
*Jesse R. Binnall
THE BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
jesse@binnall.com

26